IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. A-12-CR-102-SS |
| VS. | § | No. A-12-CR-104-SS |
| | § | No. A-12-CR-105-SS |
| | § | |
| MOHAMMAD ALI YASSINE | § | |

**MOTION TO SUPPRESS THE MARCH 22, 2012 SEARCH AND SEIZURE
AT 6006 MESA DRIVE
AND INCORPORATED MEMORANDUM OF LAW**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Steve Austin Yassine, indicted as Mohammad Ali Yassine, Defendant in the above styled and numbered cause, and respectfully moves to suppress fruits of unlawful search and seizure, including contraband, statements and other items on the grounds that the search is not reasonable and constitutes a violation of the Fourth Amendment of the United States Constitution, and would show the Court as follows:

**THE AFFIDAVIT**

The home at 6006 Mesa Drive, Austin, Travis County, Texas was searched pursuant to a search warrant on March 22, 2012. Defendant denies that the warrant sets out probable cause to search the described residence. The warrant is based on the affidavit of Jeff Terrell, an I.R.S. agent. The affidavit was signed on March 21, 2012. The affidavit contains numerous conclusory allegations as to several persons including Steve Yassine. The only factual allegations against Yassine are of criminal activity occurring in 2007, 2008 and 2009. The only drug dealing is

1

alleged is in 2008.  The allegations in 2009 are tax evasion.  Even if not so remote in time the allegations would not amount to probable to believe that 6006 Mesa contained any fruits or instrumentalities of crime.

The affidavit takes 80 pages to state probable cause, the majority of which deals with other persons and places. The probable cause section of the affidavit begins on page 17. The facts alleged for probable cause occurred in 2007 through 2009. The affidavit alleges money laundering, drug dealing, tax evasion and bank fraud in 2007, 2008 and 2009. Pp. 19-20; Pp. 80, 84 and 91. The Terrell affidavit on pages 35 through 38 gives the bank deposits and expenditures for 2007, 2008 and 2009.

A trash can search was conducted in 2010 which produced documents tying Defendant to 6006 Mesa.  P. 74.  Besides information about Defendant's loan applications and failure to file income tax returns there is little or nothing in the affidavit about Defendant and 6006 Mesa other than the summary.  The affidavit quotes recordings that allegedly show and intent to launder money but contains no facts to support a claim of drug dealing.

The Defendant has excerpted what the affidavit presents as probable cause to search 6006 Mesa, with the exception of the income and expense tables for 2007 through 2009.  See, attached Exhibit 1.

## ARGUMENT AND AUTHORITY

**I. THE SEARCH IS IN VIOLATION OF THE UNITED STATES CONSTITUTION FOURTH AMENDMENT SEARCH AND SEIZURE PROVISION BECAUSE THE INFORMATION IN THE AFFIDAVIT IS CONCLUSARY AND STALE AND DOES NOT ESTABLISH PROBABLE CAUSE TO SEARCH.**

**Staleness**

Although the information contained in the affidavit might state probable cause to believe that Defendant and 6006 Mesa were involved in drugs, tax evasion and money laundering in 2008 and 2009, there is no probable that evidence of any such activities will be found at Mesa on March 21, 2012.

If more than a brief period of time elapses between the gaining of the underlying data and the application, there is a danger that the material sought no longer will be on the premises when the officers arrive, resulting in a fruitless invasion of personal privacy.  The warrant simply does not provide probable cause.  The staleness of the facts works to attenuate their merit in a determination of probable cause.

The staleness doctrine was recognized by the Supreme Court in *Andresen v. Maryland*, 96 S.Ct. 2737, 2747 n.9, 427 U.S. 463, 478 (1976).  In the case of stolen coins and burglary tools forty day old information has been held not stale where the information was obtained from a co-defendant in a statement against his penal interest.  *United States v. Barfield*, 507 F.2d 53 (5th Cir. 1975), cert. denied, 421 U.S. 950 (1975).

In the instant case the affidavit alleges the criminal activities of Steve Yassine run from January 2008 until October 2008 except for failure to file tax returns which runs into 2009. The information is stale and without any basis to show why the residence should be searched in March 2012. Information ten months old or even three years old has been held not to be too stale where the affidavit provided adequate information to believe that child pornography would still be in the residence. *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997); *United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008) The instant case is not a child pornography case and there is no probable cause that on March 21, 2012 there would be evidence in the residence and there was no probable cause of long standing criminal activity. See, *United States v. Craig*, 861 F.2d 818, 822 (5th Cir.1988) (explaining that if "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and issuance of the warrant, the information need not be regarded as stale." (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984)).

**No Facts Amounting to Probable Cause**

The affidavit is bare bones as to Defendant because it fails to give facts but rather states conclusions. See, *United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992)*. Even if the information contained in the affidavit was more recent it would not amount to probable cause. The only detail about the late July phone call is that Mike Yassine will not accept drug money and no hint that the money is in fact even purported drug money. The two alleged drug deals are conclusory allegations with no facts as to how the deals occurred or how the affiant came by the information. If the affidavit relied on an informant the affidavit might indicate the reliability and credibility of the informant and how and when he acquired his

information and if it did not would likely be held insufficient. See, *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006). (Reliability and veracity are established by information indicating the informant has given previous reliable information). *Mack, 461 F.3d at 551*; *Christian v. McKaskle*, 731 F.2d 1196, 1200 (5th Cir. 1984). (Direct personal observation is a sufficient basis of knowledge). *Mack*, 461 F.3d at 551; *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006). The instant affidavit gives no guidance as to how or why affiant holds such a belief about drug deliveries.

The Fourth Amendment requires some nexus among a suspected criminal place, and suspected criminal activity.  In this case the affidavit shows no factual information regarding recent criminal activity involving drugs or anything else at the residence. If the Affidavit had said the information came from an informant without more, that would be insufficient without information on reliability, credibility and how the information was obtained. For all one can tell from reading the Affidavit the information was acquired in a barroom conversation. The affidavit fails to allege the kind of long-standing criminal activity that made a search of a dwelling reasonable in *United States v. Broussard*, 80 F.3d 1025, 1034-35 (5th Cir. 1996).  There is little connecting 6006 Mesa to any alleged contraband at any time.  The Fourth Amendment requires more.

**Good Faith Not Available**

Even under the deferential *Leon* standard of good faith, the warrant fails. The warrant is so clearly deficient that the executing officers' reliance on the magistrate's probable cause determination was not objectively reasonable.  *United States v. Leon*, 104 S.Ct. 3405 (1984). The burden of proof is on the prosecution to demonstrate good faith.  *United States v. Leon*, 104 S.Ct. 3405 at 3422. *United States v. Broussard*, 80 F.3d 1025, 1034-35 (5th Cir. 1996). The affidavit in the

instant case did not provide the issuing magistrate with a substantial basis for determining the existence of probable cause. See, *United States v. Leon, supra* at 3416. Because the officer gave the issuing magistrate no information which could allow him to determine that the residence contained evidence of crime, the magistrate's actions were "a mere ratification of the conclusion of others." *Leon, supra* at 3416 (quoting *Illinois v. Gates*, 103 S.Ct. 2317, 2332 (1983)). The *Leon* good-faith exception, therefore, has no application on these facts.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that any and all statements and fruits of such search be in all things suppressed from evidence as having been obtained in violation of the Fourth Amendment to the United States Constitution.

Respectfully submitted,

/s/ Stephen M. Orr\_\_\_\_\_
STEPHEN M. ORR
ORR & OLAVSON
804 Rio Grande
Austin, Texas 78701
(512) 472-8392
Fax (512) 473-8417
Texas Bar No. 15317000

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2012, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court, using the CM/ECF System which will transmit notification of such filing to all counsel of record.

Gregg Sofer, AUSA
816 Congress Ave., Suite 1000
Austin, Texas 78701

/s/ Stephen M. Orr
STEPHEN M. ORR

**EXHIBIT 1**

6. PROBABLE CAUSE

This affidavit for search warrants will demonstrate that HUSSEIN AU YASSINE (a.k.a. 'Mike Yassine"}, HADI All YASSINE, STEVE AUSTIN YASSINE, MARISSE RUALES (a.k.a. "Madi"}, VICCI, INC., 607 LLC, WALACHIINC., WAREHOUSE ENTERTAINMENT LLC, AUSTIN SIXTH STREET, INC., ACOUSTIC CAFE LLC, FAMOUS VODKA, INC., PURE AUSTIN NIGHTCLUB LLC, ISLAND OF TREASURE LLC, YASSINE ENTERPRISES LLC, and their close business associates have committed the following crimes, to include, money laundering, tax fraud, bank fraud, and/or structuring of cash deposits. The affidavit will show that the Yassines used profits from the distribution of illegal narcotics to purchase nightclubs in Austin, Texas, in the late 1990s and have laundered what was represented be to narcotics proceeds from. September 18, 2008 through June 24, 2009. In addition, as recently as December 2010, HUSSEIN All YASSINE expressed interest in laundering proceeds from what was represented to be narcotics proceeds. The affidavit will show that the Yassines have opened several nightclubs including Treasure Island Pirate Bar, Spill, Pure, Kiss & Fly, and Qua, which were used to facilitate the laundering of what was represented to be narcotics proceeds. The Yassines structured large amounts of cash into their business checking accounts and used the proceeds to facilitate the business operation and/or to conceal the true source of the funds used to purchase assets. The Yassines employ, among others, ROMMEL GOMEZ and MARISSE RUALES to help them manage and operate the clubs as well as facilitate the laundering of what was represented to be narcotics proceeds through their various

businesses. The affidavit will show that the Yassines and others have accumulated numerous assets while reporting very little, if any, income to the Internal Revenue Service. The affidavit will also show that the Yassines utilize all of their business operations as one entity for the purpose of concealing their illegal money laundering activities, structuring activities, and to evade personal income tax by purchasing assets and supporting their everyday lifestyle while paying minimal, if any, federal income tax. Information contained within the attached affidavit is based on information provided to your affiant from other law enforcement agents, witnesses, and documents inspected during the course of this investigation. The information provided is not inclusive of all available information known to your affiant and only contains information needed to establish probable cause. Additionally, the statements and recorded communications of confidential informants used in this affidavit are summaries and not verbatim statements or recordings. Furthermore, the referenced recorded communications are and based on preliminary transcripts and quotations contained within the affidavit are not necessarily meant to be exact quotes. The facts that establish probable cause necessary for the issuance of the search warrants are as follows:

a. Money Laundering Activities

1. Your affiant believes that the Yassines utilized their businesses and business bank accounts interchangeably for the purpose of laundering what was represented to be narcotics proceeds. The aforementioned evidence reveals that HUSSEIN Al1 YASSINE used five (5) of his nightclub bank accounts to facilitate the laundering of purported narcotics proceeds, in an attempt to conceal the true source and nature of the proceeds. Your affiant knows that HUSSEIN ALl YASSINE offered to use Yassine Enterprises,

which in your affiant's opinion is the parent company for the nightclubs, to facilitate the laundering of at least $1 million in purported narcotics proceeds. Therefore, your affiant believes that the Yassines utilize their entire business operation, including bank accounts, as one entity for whatever legal and/or illegal purpose they see fit.

2. Your affiant has reviewed the transcripts of several recorded communications among and between.CI-1, HUSSEIN All YASSINE, HADI ALl YASSINE, STEVE YASSINE, MARISSE RUALES and ROMMEL GOMEZ, among others. These transcripts often include translation of French and/or Arabic into English and were prepared, when necessary, by a FBI linguist. The transcripts include communications that were recorded by Cl-1 as wen as communications intercepted *via* court-authorized wire and/or electronic surveillance. The recordings establish that HUSSEIN All YASSINE, HADI All YASSINE, STEVE YASSINE, and MARISSE RUALES all knew or believed that Cl-1 was a narcotics trafficker who was making a lot of money, in the form of cash, and that Cl-1 needed to legitimize this money and make it appear that Cl-1 had legitimate employment income. The recordings also establish that HUSSEIN All YASSINE, HAD! All YASSINE, STEVE YASSINE, and MARISSE RUALES all participated in some way in the actual laundering or conspiracy to launder the narcotics proceeds being produced by Cl-1. I have not included all of the recordings that establish these facts. The following are examples of transcripts of recordings that establish probable cause to believe that HUSSEIN All YASSINE, HADI All YASSINE,
STEVE YASSINE, and MARISSE RUALES have committed money laundering offenses. These same examples establish probable cause to believe that five (5) of the Yassine family operated nightclubs ha\/e been used to facilitate (or were used as instrumentalities of) money laundering

offenses. These examples also establish probable cause to believe that evidence of money laundering offenses and the purported narcotics proceeds provided to HUSSEIN AU YASSINE will be found inside certain locations.

Terrell affidavit Pp.17-19

1. Your affiant believes that the Yassines utilized their businesses and business bank accounts interchangeably for the purpose of laundering what was represented to be narcotics proceeds. The aforementioned evidence reveals that HUSSEIN All YASSINE used five (5) of his nightclub bank accounts to facilitate the laundering of purported narcotics proceeds, in an attempt to conceal the true ·source and nature of the proceeds. Your affiant knows that HUSSEIN ALl YASSINE offered to use Yassine Enterprises, which in your affiant's opinion is the parent company for the nightclubs, to facilitate the laundering of at least $1 million in purported narcotics proceeds. Therefore, your affiant believes that the Yassines utilize their entire business operation, including bank accounts, as one entity for whatever legal and/or illegal purpose they see fit.

2. Your affiant has reviewed the transcripts of several recorded communications among and between CI-1, HUSSEIN All YASSINE, HADI ALl YASSINE, STEVE YASSINE, MARISSE RUALES and ROMMEL GOMEZ, among others. These transcripts often include translation of French and/or Arabic into English and were prepared, when necessary, by a FBI linguist. The transcripts include communications that were recorded by Cl-1 as wen as communications intercepted *via* court-authorized wire and/or electronic surveillance. The recordings establish that HUSSEIN All YASSINE, HADI All YASSINE, STEVE YASSINE, and

MARISSE RUALES all knew or believed that Cl-1 was a narcotics trafficker who was making a lot of money, in the form of cash, and that Cl-1 needed to legitimize this money and make it appear that Cl-1 had legitimate employment income. The recordings also establish that HUSSEIN All YASSINE, HADI All YASSINE, STEVE YASSINE, and MARISSE RUALES all participated in some way in the actual laundering or conspiracy to launder the narcotics proceeds being produced by Cl-1. I have not included all of the recordings that establish these facts. The following are examples of transcripts of recordings that establish probable cause to believe that HUSSEIN All YASSINE, HADI All YASSINE, STEVE YASSINE, and MARISSE RUALES have committed money laundering offenses. These same examples establish probable cause to believe that five (5) of the Yassine family operated nightclubs ha\/e been used to facilitate (or were used as instrumentalities of) money laundering offenses. These examples also establish probable cause to believe that evidence of money laundering offenses and the purported narcotics proceeds provided to HUSSEIN AU YASSINE will be found inside certain locations.

3. The following was obtained from recorded communications of Confidential Informant 1 (CI-1) who has provided information regarding HUSSEIN All YASSINE, HADI All YASSINE, MARISSE RUALES, and ROMMEL GOMEZ among others. Cl-1 provided credible and reliable information, which has been independently corroborated through information obtained from surveillance, consensually recorded conversations, and documents inspected during this investigation. Cl-1 is being compensated by the Federal Bureau of Investigation (FBI) for his/her cooperation and information. Cl-1 has been convicted of issuance of a bad check in 2001 and assault causing bodily injury in 2005. Currently, Cl-1

has no pending criminal charges. Cl-1 has used illegal narcotics on multiple occasions while being compensated by the FBI and lied about the use of illegal narcotics to investigators on at least one occasion. Furthermore, prior to Cl-1's cooperation with the investigation, Cl-1 participated in narcotics sales. Additionally, while providing information to investigators, Cl-1 used a false letter of employment provided by the subjects of this investigation to obtain a vehicle. CI-1 provided the following information in sum and substance: a. The transcripts of the recordings establish that STEVE YASSINE was well aware of, and in fact participated in, narcotics trafficking activities with Cl-1. STEVE YASSINE contacted HUSSEIN AU YASSINE in late July of 2008, and proposed that HUSSEIN All YASSINE provide checks from the Yassine family businesses in exchange for cash being generated by Cl-1. STEVE YASSINE told Cl-1 that HUSSEIN AU YASSINE had stated tha.t he did not want to be involved in drug deals but readily agreed to take the cash and issue the checks. In mid September 2008, Cl-1 received HUSSEIN AU YASSINE's permission to legitimize $6,500 in cash. Cl-1 was told by HUSSEIN AU YASSINE that Cl-1 could deal directly with MARISSE RUALES, HUSSEIN All YASSINE's secretary. C1-1 met with RUALES and told her that Cl-1 needed to come .up with some way to make sure that all the cash he had coming. in "on the side" was legitimate. RUALES called HUSSEIN All YASSINE from the office to confirm that this was acceptable and then Issued Cl-1 a $6,000 check drawn on the bank. account of Treasure Island Pirate Bar, one of the Yassine nightclubs. b. In early October of 2008, Cl-1 spoke to HUSSEIN All YASSINE and his brother HADI All YASSINE about the code words that Cl-1 used to describe kilograms of cocaine. A few days later, Cl-1 reported to the FBI that Cl-1 spoke with both HADI All YASSINE and STEVE YASSINE. Cl-1 reported that STEVE YASSINE and Cl-1 discussed laundering $50,000, and that HADI All

YASSINE and STEVE YASSINE told Cl-1 how to do it. This conversation was either not recorded or cannot be located at this time. In a recorded conversation later that day, Cl-1 talked with HADI All YASSINE in a car, while driving to the Yassine Enterprise offices. HADI All YASSINE asked Cl-1 if Cl-1 had the $50,000. Cl-1 told HADI All YASSINE that he/she did not, and explained that he/she had just spent the money on a "load" for $24,000. {Your affiant knows from other recorded conversations of Cl-1 that the word "load" refers to kilograms of cocaine.) Cl-1 explained that Cl-1 received $8,500for shipping the last four. HADI ALI YASSINE said, "Great, good for you!..." Cl-1 then discussed a multiple kilogram deal that Cl-1 was negotiating and HADI ALIYASSINE counseled Cl-1 as to how Cl-1 should proceed with this drug deal.. Eventually, the men arrived at the Yassine Enterprise offices where Cl-1 told HUSSEIN ALI YASSINE that he had $8,500 and that HUSSEIN AU YASSINE only needed to give Cl-1 a check for $8,000. Cl-1 explained that he takes four "birds" (kilograms of cocaine) to Colorado every month and receives $8,500. HADI All YASSINE whispered, "Be careful huh." Cl-1 assured HADI ALI YASSINE that he was doing it slowly. HUSSEIN ALI YASSINE eventually asked, "How much is it, cous?" Cl-1 stated "$8,500." HADI All YASSINE stated "$8,000." HUSSEIN All YASSINE asked Cl-1 what this does for Cl-1 and Cl-1 explained that it shows that Cl-1 is working. HADI All YASSINE said" ... at the end, we have troubles ... " Cl-1 assured HADI AU YASSINE that Cl-1 "can be a contractor that watches the bars ... at least I show some kind of income." HUSSEIN All YASSINE whispered something to Cl-1 and Cl-1 told HUSSEIN All YASSINE that Cl-1 can deposit

the check whenever HUSSEIN AU YASSINE wanted. HUSSEIN AU YASSINE told Cl-1 that if Cl-1 goes and puts the check in right now, HUSSEIN ALI YASSINE can put in a deposit right now. Eventually, HUSSEIN All YASSINE instructed Cl-1 to deposit the check on Monday.

At this point, HADI All YASSINE asked for $500 of Cl-1's cash. Cl-1 reported that HADI All YASSINE did take. $500 of the money that day. HUSSEIN All YASSINE then instructed MARISSE RUALES to issue checks from certain nightclubs. HUSSEIN All YASSINE then told Cl-1 "Just in case somebody asks me where is that .... they check - if they come and ask me, I'm paying you for services." HUSSEIN All YASSINE then instructed MARISSE RUALES to have Cl-1 fill out an employee package and to put him into the system. I know from my conversations with FBI agents assigned to this case that the FBI recovered (from Cl-1) an $,8000 check made out to Cl-1 and issued from Spill, one of the Yassine family's nightclubs.

Terrell affidavit Pp. 19-22

d. Your affiant has reviewed and analyzed United States Federal Income Tax Returns (Form 1040) and financial statements of STEVE YASSINE. Your affiant believes that STEVE YASSINE received substantial income in the 2003-2009 tax years in excess of the minimum filing requirement established by the Internal Revenue Service and should have filed tax returns for the 2003-2009 tax years.

Your affiant summarized the tax returns, financial statement, and income received by STEVE YASSINE as follows:

1. STEVE YASSINE, SSN: XXX-XX-5304, filed United States Federal Income Tax Returns (Form 1040) for the years 2001 through 2002 as married filing. jointly and had taxable income of $17,698 and $30,944, respectively. For the years 2003-2009, STEVE YASSINE did not file United States Federal Income Tax Returns.

2. Your affiant reviewed a uniform residential loan application from National City Bank which revealed that STEVE YASSINE applied for a

residential loan for the property located at 6006 Mesa Drive, Austin, Travis County, Texas on or about July 09, 2007. According to the loan application, STEVE YASSINE disclosed that he has been the owner of Yassine Enterprises for the last seven (7) years and earns approximately $22,000 a month or $264,000 annually.

3. Your affiant reviewed records from Austin lnfiniti which revealed that STEVE YASSINE purchased a 2003 lnfiniti G35 from Austin lnfiniti on or about February 13, 2007. According to the credit application, STEVE YASSINE has been the owner of Yassine Enterprises for the last ten (10) years and earns approximately $80,000 per year.

4. Your affiant reviewed records from GE Money Bank which revealed STEVE YASSINE signed a purchase agreement for a 2007 Yamaha boat for $42,480.44 on or about May 19, 2007. The financing agreement showed that STEVE YASSINE has worked for Vicci nightclub for the last ten (10) years and earns $120,000 annually.

5. In 2007, STEVE YASSINE received approximately $35,500 in taxable income from HUSSEIN All YASSINE. The income received was for the payment of STEVE YASSINE's residence and boat. In the 2007 tax year, the filing requirement for a single individual was $8,750. Your affiant believes that STEVE YASSINE received the following taxable income:

(Tables of income, sources and expenditures omitted)

39. Your affiant and/or IRS Special Agent James Neff, who has been a Special Agent with the Internal Revenue Service (IRS) Criminal Investigation Division since April of 1988 and investigated or been involved in the investigation of alleged violations of the Internal Revenue Code and related offenses of Title 18 United States Code; Title 21 United States Code; Title 26 United States Code; and Title 31 United States Code

have witnessed ROMMEL GOMEZ on seven (7) separate occasions driving a white lsuzu Trooper, Texas License Plate# 073-WLX at various Bank of America branch locations in Austin, Texas from May 20, 2009 through June 19, 2009. On three~ (3) of those occasions, your affiant confirmed through the analysis of Bank of America records, including deposit slips, that cash deposits were structured into the accounts of HUSSEIN All YASSINE at the same time ROMMEL GOMEZ was witnessed at the bank. Your affiant has reviewed records from the Texas Department of Transportation which revealed that Texas License Plate# 073-WLX is registered to STEVE YASSINE.

Terrell Affidavit P. 66


 d. 6006 Mesa Drive, Austin, Travis County, Texas 78731, the residence of STEVE YASSINE;

1. A review of recorded transcripts reveals that while inside STEVE YASSINE's residence, STEVE YASSINE contacted HUSSEIN All YASSINE in late July of 2008 and proposed that HUSSEIN All YASSINE provide checks from the Yassine family businesses in exchange for the cash being generated by Cl-1. STEVE YASSINE then told Cl-1 that HUSSEIN All YASSINE had stated that he did not want to be involved in drug deals but readily agreed to take the cash and issue the checks.

2. On or about January 11, 2008, STEVE YASSINE used his residence located at 6006 Mesa Drive, Austin, Texas to arrange the purchase of approximately ¾ kilogram of cocaine.

3. On or about October 5, 2008, STEVE YASSINE utilized his residence as a delivery location for a kilogram of cocaine and accepted $500 from Cl-1 as payment for arranging the sale.

4. On or about July 22, 2010 and August 5, 2010, your affiant obtained trash that had been placed on the· curb for collection at 6006 Mesa Drive, Austin; Texas 78731. Contained within the trash were financial documents addressed to STEVE YASSINE from AAA Texas, Fidelity Brokerage Services LLC, Capital Tax, and Pro Tech Pool Service. Your affiant believes that the financial documents show that STEVE YASSINE receives and stores financial documents within his residence.

5. Your affiant reviewed records from Texas American Title Company, which revealed that STEVE YASSINE purchased 6006 Mesa Drive, Austin, Travis County, Texas 78731 for $575,000 on or about July 9, 2007.

6. Your affiant reviewed records from the City of Austin utility, which revealed utilities at 6006 Mesa Drive, Austin, Travis County, Texas 78731 are under the account name of STEVE YASSINE with a social security number of XXXXX-5304. According to records from the Social Security Administration, STEVE YASSINE's Social Security Number is XXX-XX-5304. The utilities were connected on or about July 10, 2007 and were still active as of March 5, 2012.

Terrell affidavit pp. 73-74

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. A-12-CR-102-SS |
| VS. | § | No. A-12-CR-104-SS |
| | § | No. A-12-CR-105-SS |
| | § | |
| MOHAMMAD ALI YASSINE | § | |

**O R D E R**

Came on this day to be heard, Defendant's Motion to Suppress the March 22, 2012 Search and Seizure at 6006 Mesa Drive, Austin, Texas. The Court, having read the pleadings, and having heard the evidence and arguments of counsel, finds that the motion has merit and hereby ORDERS that it be GRANTED.

All evidence and statements obtained as a result of the search of 6006 Mesa are hereby ordered SUPPRESSED.

Signed and Ordered entered on _____, 2012.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE